T.C. Memo. 1995-483


UNITED STATES TAX COURT


JOHN EDWARD KERRIGAN AND JOAN MARIE KERRIGAN, DECEASED,
Petitioners <u>v</u>. COMMISSIONER OF INTERNAL REVENUE,
Respondent


Docket No. 11309-92.                    Filed October 4, 1995.


<u>Jonathan David Robbins</u> and <u>Thomas M. McCartin</u>, for

petitioners.

<u>Michal Cline</u> and <u>Warren P. Simonsen</u>, for respondent.

MEMORANDUM OPINION


RUWE, <u>Judge</u>:  Respondent determined a deficiency[1] in

_____

[1]We granted respondent's Motion for Leave to File an Amended
Answer asserting an increased deficiency.  In the amended answer,
respondent contends that she incorrectly applied withholding
credits in determining the amount of petitioners' deficiency.
Disregarding the withholding credits, the adjustments in the
notice of deficiency should have resulted in a deficiency of
$51,678 for the taxable year 1985.  Petitioners do not dispute
                                                (continued...)

petitioners' Federal income tax and additions to tax as follows:

| Year | Deficiency | Additions to Tax | |
| | | Sec. 6651(a)(1) | Sec. 6661 |
| --- | --- | --- | --- |
| 1985 | $23,877 | $5,969 | $5,969 |

After concessions, the issues for decision are: (1) Whether petitioners are entitled to a Schedule A deduction for charitable contributions in the amount of $1,127; (2) whether petitioner Joan Marie Kerrigan (Mrs. Kerrigan) is entitled to Schedule C deductions for advertising expenses of $3,974; car and truck expenses of $783.50; commissions of $2,485.33; depreciation of $2,644; and freight expenses of $39; (3) whether petitioner John Edward Kerrigan (Mr. Kerrigan) is entitled to Schedule C deductions for repairs of $3,610.55 and supplies of $6,143; (4) whether Mrs. Kerrigan and Mr. Kerrigan are entitled to Schedule C deductions for insurance expenses of $571 and $146, respectively; laundry and cleaning expenses of $1,107 and $618.55, respectively; office expenses of $3,342.15 and $2,829.89, respectively; and travel and entertainment expenses of $16,657.12 and $7,113.69, respectively; (5) whether petitioners are liable

---

[1](...continued)
this in their brief, and it is clear that withholding credits are not to be taken into account in determining the amount of the taxpayer's "deficiency". See sec. 6211(a). Respondent, on the other hand, agrees that petitioners are entitled to a credit for the previously withheld tax when calculating the amount of any unpaid tax.

for an addition to tax under section 6651(a)[2] for failure to file
a timely Federal income tax return for 1985; and (6) whether
petitioners are subject to an addition to tax under section 6661
as a result of a substantial understatement of their income tax
for 1985.

## Background

Some of the facts have been stipulated and are so found.
The stipulation of facts and attached exhibits are incorporated
herein by this reference.  Mr. Kerrigan filed this petition on
behalf of himself and his deceased wife.  At the time of filing,
Mr. Kerrigan resided in Potomac, Maryland.  Petitioners were
married and filed a joint 1985 Federal income tax return.  Mrs.
Kerrigan died on September 15, 1991.

Petitioners filed their 1985 return on April 12, 1989.  On
their return, Mr. Kerrigan listed his occupation as "publisher".
Mr. Kerrigan had been employed for 25 years by the Washington
Post Co. (the Post), where he started as a classified advertising
salesman before eventually becoming a general advertising
manager.  Mr. Kerrigan resigned from his position in February
1985.  However, after plans for new employment in Chicago failed
to materialize, the Post retained him as a consultant.  Around

---

[2]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the year in issue, and
all Rule references are to the Tax Court Rules of Practice and
Procedure.

the same time, Mr. Kerrigan also began doing work as a consultant for the Times Journal Co., the Government Computer News, and Atex.[3]

As a consultant, Mr. Kerrigan was responsible for his own expenses. He claimed deductions for expenses incurred in his consulting business on his separate Schedule C of petitioners' 1985 Federal income tax return.

Mrs. Kerrigan listed her occupation on the couple's 1985 return as an "independent sales agent". During 1985, Mrs. Kerrigan worked as an independent realtor associated with Moussa Mooadel Realtors, Inc., in Bethesda, Maryland. She specialized in the sale of expensive houses in the suburbs of Maryland. Mrs. Kerrigan reported her real estate agent income and expenses on a separate Schedule C.

On February 25, 1992, respondent issued a notice of deficiency, which made numerous adjustments involving the disallowance of deductions claimed by petitioners. These deductions were disallowed because petitioners failed to provide adequate substantiation.

Deductions from gross income are a matter of legislative grace, and taxpayers bear the burden of proving that they are entitled to any deductions claimed. Rule 142(a); Welch v.

---

[3]In September 1985, Mr. Kerrigan accepted a position with the Times Journal Co. as a publisher of what is now called the Defense News.

Helvering, 290 U.S. 111, 115 (1933).  Section 162(a) allows taxpayers a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".  In order to be deductible, however, the expenses must be "directly connected with or pertaining to the taxpayer's trade or business".  Sec. 1.162-1(a), Income Tax Regs.

For convenience, we will combine our findings of fact and opinion with respect to the items which remain in issue.

Charitable Contributions

Subject to limitation, section 170 permits a deduction for charitable contributions paid within the taxable year.  Sec. 170(a) and (b).  Petitioners claimed charitable contributions on their 1985 Federal income tax return in the amount of $6,364.  This amount consisted of noncash contributions of $4,184 and cash contributions of $2,180.  Respondent allowed the noncash contributions in full, but denied $1,127 of the cash contributions because of a lack of adequate substantiation.

At trial, petitioners produced four canceled checks totaling $402.50.  Three of these checks were made payable to a "Christmas Bazaar".  Petitioners failed to offer any testimony to demonstrate that these expenditures were charitable contributions.  The fourth check was made payable to the Lupus Foundation in the amount of $100.  The Commissioner has recognized the Lupus Foundation as a charitable organization

- 6 -

within the meaning of section 170(c). See, e.g., Dept. of Treas., Cumulative List of Organizations Described in Section 170(c) of the Internal Revenue Code of 1954, at 687 (1985). Mr. Kerrigan also testified that he and his wife made cash contributions to their local Catholic church when they attended Mass on Sundays. Petitioners produced no documentation to substantiate this, and Mr. Kerrigan's testimony was vague as to the amounts and frequency of these contributions.

Respondent has already allowed petitioners $1,053 of cash contributions. Petitioners' evidence falls far short of justifying any additional amount.

Advertising Expenses

Mrs. Kerrigan claimed a Schedule C deduction for advertising expenses in the amount of $5,419. Of this amount, respondent allowed $1,445.

Petitioners argue that Mrs. Kerrigan's expenses consisted of expenditures for signs, open houses, and "gifts" which Mrs. Kerrigan frequently purchased for her clients as an additional form of advertising. Mrs. Kerrigan's open house expenses included expenditures for plants and chocolates, while her business "gifts" ranged from children's toys to maternity clothes. At trial, petitioners presented Mrs. Kerrigan's business log for 1985, which contains numerous entries throughout the year, reflecting numerous expenditures for these items. The

total for these items was $3,617.01.[4]  Petitioners' daughters testified that Mrs. Kerrigan frequently purchased such items in the course of her business.  The expenditures reflected in the log are reasonable considering Mrs. Kerrigan's position as a successful realtor specializing in the sale of expensive houses. We hold that petitioners are entitled to deduct $3,617.01 for Mrs. Kerrigan's advertising expenses.

Car and Truck Expenses

Mrs. Kerrigan claimed a Schedule C deduction for car and truck expenses in the amount of $2,838.50.  Of this amount, respondent allowed $2,055.  On brief, petitioners argue that they are actually entitled to a greater deduction than originally claimed.

Petitioners argue that Mrs. Kerrigan incurred gasoline and insurance expenses of $3,093.12 on her 1985 Oldsmobile Toronado. In arriving at this figure, it appears that petitioners counted certain expenditures from Mrs. Kerrigan's log twice.  The log indicates that Mrs. Kerrigan's total business expenses for the Toronado in 1985 were $2,477.  Yet, when calculating their expenses on brief, petitioners add to this figure the amounts of $238 and $507.  However, these expenses had already been taken

[4]Mrs. Kerrigan had expenditures of $2,035.04 for signs, $1,195.27 for items for open houses, and $386.70 for business "gifts".

into account in arriving at the initial figure of $2,477.
Petitioners argue that Mrs. Kerrigan used the Toronado for
business purposes 96 percent of the time.  Exactly how this
figure was arrived at, one can only speculate.  Petitioners also
contend that they are entitled to a mileage deduction for Mrs.
Kerrigan's use of a 1980 Mercedes 350 SL.  No deduction for this
appears to have been claimed on their return.  However,
petitioners do not explain why this mileage was not claimed on
their return, nor have they offered any evidence to prove what,
if any, use of the Mercedes was attributable to business.
Petitioners have not established an entitlement to deductions in
excess of the amount allowed by respondent.  Accordingly, we
sustain respondent's disallowance.

Commission Expenses

Petitioners claimed a Schedule C deduction of $6,412.33 for
commissions paid by Mrs. Kerrigan in connection with the sale of
real estate in 1985.  Respondent allowed a deduction of $3,927.
Petitioners attempted to prove that the additional commissions
were paid to their daughters.  The testimony of the daughters was
vague as to how these "commissions" were computed, as well as to
their amounts.  Moreover, Mr. Kerrigan observed at trial that his
daughters appeared to "overstate" the amount of their
commissions.  Interestingly, the checks that petitioners offered
to substantiate these "commissions" were made payable to either

Safeway (a grocery store) or Britches (a clothing store), rather than to the daughters themselves. In addition, Mrs. Kerrigan failed to record these checks in her business log or to provide her children with Forms W-2 or 1099. Petitioners have failed to substantiate any deductions in excess of the amount already allowed by respondent.

Depreciation

Petitioners also claimed a deduction on Mrs. Kerrigan's Schedule C for depreciation in the amount of $5,030. Respondent allowed $2,386. Petitioners on brief again argue that they are entitled to a larger depreciation deduction than they originally claimed.

Mrs. Kerrigan claimed a depreciation deduction for three items: Her 1985 Oldsmobile Toronado, her "office" in petitioners' house in Potomac, Maryland, and a condominium that petitioners owned in Ocean City, Maryland, which Mrs. Kerrigan allegedly used as an office. We find several difficulties with Mrs. Kerrigan's depreciation deduction. First, petitioners have not offered sufficient evidence of Mrs. Kerrigan's cost basis in the Toronado. Second, we repeat our inability to understand how Mrs. Kerrigan arrived at a figure of "96 percent business use" for the vehicle. Thus, we have no way of knowing if this is a proper allocation between business and personal use. In addition, petitioners have failed to provide us with any evidence of Mrs. Kerrigan's cost basis in petitioners' house in Potomac.

Finally, we have no evidence of petitioners' cost basis in the Ocean City property, and except for Mr. Kerrigan's self-serving testimony at trial, there is no evidence that Mrs. Kerrigan used the Ocean City condominium as an office. We therefore sustain respondent's determination.

Freight Expenses

Mrs. Kerrigan claimed a Schedule C deduction for freight expenses in the amount of $122. Respondent allowed $83. Since petitioners have not presented any evidence to substantiate this deduction, we sustain respondent's determination.

Repair Expenses

Respondent disallowed Mr. Kerrigan's $3,610.55 Schedule C deduction for repairs in its entirety. Petitioners offered nothing to substantiate most of this amount, nor do they explain how it was computed. Petitioners argue on brief that they have presented sufficient documentary evidence to substantiate a deduction in the amount of $329. They offered a handwritten log prepared by Mr. Kerrigan as a record of his business, travel, and entertainment expenses for 1985. However, they produced no invoices or canceled checks. Under these circumstances, we hold that Mr. Kerrigan has not adequately substantiated the business purpose of this Schedule C deduction. See sec. 1.162-1(a), Income Tax Regs.

Supplies

Respondent disallowed Mr. Kerrigan's entire Schedule C deduction for supplies in the amount of $6,143.23. On brief, respondent concedes that petitioners have substantiated a deduction of $98.25. At trial, petitioners presented credit card receipts totaling $226.64. Most of these receipts were for purchases at the Drug Fair in Potomac, Maryland. Descriptions on the receipts of the various purchases are either nonexistent or illegible. Because petitioners have failed to substantiate a business purpose for this deduction, we sustain respondent's disallowance of these expenses except for the $98.25 which respondent concedes.

Insurance Expenses

Respondent disallowed Schedule C deductions for insurance expenses by Mrs. Kerrigan and Mr. Kerrigan in the respective amounts of $571 and $146.96. Petitioners presented insufficient evidence at trial to convince us that they are entitled to these deductions. Petitioners produced an insurance bill from the Erie Insurance Co. in the amount of $238. We are uncertain, however, of the date on which this bill was either issued or paid.[5] We therefore sustain respondent's determination.

---

[5]We note the apparent similarity between this bill and the car and truck expense deduction claimed by Mrs. Kerrigan for a $238 payment to the Erie Insurance Co. on Jan. 7, 1985.

## Laundry and Cleaning Expenses

Respondent disallowed Schedule C deductions for cleaning expenses by Mrs. Kerrigan and Mr. Kerrigan in the respective amounts of $1,107 and $618.55. None of these expenses appear to be recorded in Mrs. Kerrigan's business log. While petitioners produced canceled checks totaling $660.25 payable to "Crest" or "Crest Cleaners", they failed to demonstrate the business purpose for these checks. Accordingly, we sustain respondent's determination.

## Office Expenses

Mrs. Kerrigan and Mr. Kerrigan claimed a Schedule C deduction for office expenses in the respective amounts of $4,409.15 and $3,715.89. Respondent allowed $1,067 and $886, respectively. While petitioners offered no evidence to substantiate Mr. Kerrigan's deduction, they did present several entries from Mrs. Kerrigan's log in an attempt to substantiate her deduction. Some of these expenditures, however, do not appear to be within the realm of office expenses. Some of the expenses include lawn care and house painting for house settlements. Petitioners have failed to substantiate deductions for office expenses in addition to the amounts already allowed by respondent.

Travel and Entertainment Expenses

Mrs. Kerrigan claimed a Schedule C deduction for travel and entertainment expenses in the amount of $16,834.12. Respondent allowed a deduction of $177.

Mrs. Kerrigan claimed expenses in 1985 for 259 meals for a total cost of $6,931. Petitioners argue that these meals were consumed during meetings Mrs. Kerrigan had with her business clients and associates.

Section 274 disallows deductions for entertainment expenses unless the taxpayer is able to establish that the item is related to, or associated with, the active conduct of his or her trade or business. Sec. 274(a)(1)(A). At the same time, section 274(d) imposes substantiation requirements for these deductions which are even more exacting than the requirements under section 162 for ordinary and necessary business expense deductions. A taxpayer generally must substantiate each expenditure by producing adequate records or sufficient evidence to corroborate his or her own statements. Sec. 1.274-5(c)(1), Income Tax Regs. The "adequate records" standard, in turn, requires that a taxpayer maintain an account book, which contains contemporaneous entries which clearly indicates the requisite business purpose. Sec. 1.274-5(c)(2)(i) and (ii), Income Tax Regs. In addition, a taxpayer must generally supply documentary evidence, such as receipts or paid bills. Sec. 1.274-5(c)(2)(iii), Income Tax Regs. Alternatively, taxpayers who are unable to satisfy the

"adequate records" threshold are still entitled to a deduction for expenses that they can substantiate with other corroborative evidence. Sec. 1.274-5(c)(3), Income Tax Regs. Usually, this will consist of the written or oral testimony of the individuals entertained by the taxpayer. Sec. 1.274-5(c)(3), Income Tax Regs.

Section 274(e) modifies the requirements of subsection (a) in permitting a deduction for expenses incurred for food and beverages that are furnished to individuals under circumstances generally considered conducive to a business discussion. Sec. 274(e)(1). Factors entering into this determination include the surroundings in which the food and beverages are furnished, the trade, business, or income-producing activity of the taxpayer, and the relationship to such trade, business, or activity of the person furnished with the food or beverages. Sec. 274(e).

Mrs. Kerrigan did not record the business purpose of these almost daily meals or the business relationship of the persons whom she entertained. Nor have petitioners introduced testimony of any of Mrs. Kerrigan's business clients. See sec. 1.274-5(c)(3), Income Tax Regs. Under these circumstances, petitioners have not met the substantiation requirements. See, e.g., Sam Goldberger, Inc. v. Commissioner, 88 T.C. 1532, 1558 (1987); Walliser v. Commissioner, 72 T.C. 433, 442 (1979).

In addition, Mrs. Kerrigan claimed a business deduction for

a 9-day trip to Hawaii in March 1985.[6]  At trial, Mr. Kerrigan testified that this was a business trip for both him and Mrs. Kerrigan.  However, Mrs. Kerrigan did not record in her log the business purpose of the trip or any meetings she had there. Moreover, there was no testimony presented at trial indicating that Mrs. Kerrigan ever worked outside of suburban Maryland in 1985.

Mr. Kerrigan also claimed a Schedule C travel and entertainment expense deduction of $12,409.69.  Respondent allowed a deduction of $5,296.  Mr. Kerrigan failed to substantiate any deductions for travel and entertainment in excess of the amount already allowed by respondent.

Section 6651(a)

Section 6651(a) imposes an addition to tax for failure to file a timely return.  Sec. 6651(a)(1).  Respondent's determination is presumed correct, and petitioners bear the burden of proving otherwise.  Rule 142(a); Abramo v. Commissioner, 78 T.C. 154, 163 (1982).  Section 6651(a) provides an exception when the taxpayer's failure to file is due to reasonable cause and not willful neglect.  Petitioners make no argument that there was reasonable cause for their nearly 3-year delay in filing.  Instead, they argue that no deficiency exists,

---

[6]Petitioners did not allocate any portion of their travel expenses as personal expenditures.

and maintain that by filing late, they were merely deferring receipt of their tax refund.  Thus, we sustain the addition to tax.

<u>Section 6661</u>

Section 6661(a) provides for an addition to tax equal to 25 percent of the amount of any underpayment which is attributable to a substantial understatement of income tax.  The amount of the understatement is equal to the excess of the amount of tax that is required to be shown on the return for the taxable year over the amount of the tax actually shown on the return.  <u>Woods v. Commissioner</u>, 91 T.C. 88, 94 (1988).  An understatement is "substantial" when it exceeds the greater of 10 percent of the tax which is required to be shown on the return or $5,000.  Sec. 6661(b)(1).  However, the amount of the understatement may be reduced for amounts that the taxpayer adequately discloses or supports with substantial authority.  Sec. 6661(b)(2)(B); <u>Mitchell v. Commissioner</u>, T.C. Memo. 1994-242.  Petitioners have failed to present any argument or evidence regarding the applicability of either exception.  Rather, they contend that no understatement exists.  Accordingly, we sustain the addition to tax.

<u>Decision will be entered under Rule 155</u>.