T.C. Memo. 1995-528


UNITED STATES TAX COURT


GRETA ANN CLIFTON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 6047-93.                    Filed November 7, 1995.


Greta Ann Clifton, pro se.

<u>Yolanda R. Garcia</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

PARR, <u>Judge</u>:  Respondent determined a deficiency in and
additions to petitioner's Federal income tax as follows:

| | | Additions to Tax | | |
| | | Sec. | Sec. | Sec. |
| <u>Year</u> | <u>Deficiency</u> | <u>6653(a)(1)</u> | <u>6653(a)(2)</u> | <u>6661(a)</u> |
| 1985 | $10,398 | $520 | [1] | $2,600 |

[1] 50 percent of the interest due on the portion of the underpayment attributable to negligence.

After concessions,[1] the issues for decision are: (1) Whether petitioner had unreported Schedule C income. We hold that she did to the extent set out below. (2) Whether petitioner may deduct claimed Schedule C expenses in excess of the amounts allowed by respondent. We hold that she may not except as set out below. (3) Whether petitioner may deduct claimed employee business expenses. We hold that she may not. (4) Whether petitioner may deduct a claimed capital loss. We hold that she may not. (5) Whether petitioner had additional self employment income. We hold that she did. (6) Whether petitioner is liable for the additions to tax for negligence under section 6653(a)(1) (2).[2] We hold that she is liable. (7) Whether petitioner is liable for an addition to tax for substantial understatement of tax under section 6661(a). We hold that she is liable.

---

[1] Respondent conceded that petitioner is allowed Schedule C deductions of $2,485 and $986 for legal expenses and office expenses, respectively. Petitioner conceded that she had unreported Schedule C income of $433, and that she is not entitled to a $20 Schedule C deduction for dues and publications, or a $403 Schedule C deduction for insurance.

The parties agree that, due to the increase in petitioner's adjusted gross income, petitioner's claimed general sales tax deduction and child and dependent care credit must be mathematically adjusted. The parties can make these adjustments in their Rule 155 computations.

[2] All section references are to the Internal Revenue Code in effect for the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

FINDINGS OF FACT

Some of the facts have been stipulated.  The stipulated facts and the accompanying exhibits are incorporated into our findings by this reference.  Petitioner, Greta Ann Clifton, resided in Albuquerque, New Mexico, on the date the petition was filed.

Petitioner is an accountant.  During 1985, petitioner was the Controller of Knappco, Inc. (Knappco), a company located in Kansas City, Missouri.  While working for Knappco, petitioner lived at 599 Highway 224, Wellington, Missouri.

While petitioner was working at Knappco, Cheryl Daro (Daro) babysat petitioner's child.  During April of 1985, petitioner and Daro formed Cena Enterprises (Cena).  Cena was formed to provide computer data entry services for Knappco.  Cena was licensed to do business in Napoleon, Missouri.  Petitioner and Daro opened a joint checking account at Napoleon Bank, Napoleon, Missouri, in the name of Cena (Cena account).  During 1985, both petitioner and Daro made deposits to and withdrawals from the Cena account.

Petitioner and Daro, doing business as Cena, prepared letters, mailing lists, and inventory tables for Knappco.  More specifically, petitioner would bring a computer to Daro's home in Napoleon, Missouri, and Daro would type the letters, mailing lists, etc. while petitioner was working at Knappco.

Cena did not file a Form 1065, U.S. Partnership Return of Income, for the year 1985. Cena had gross receipts of $24,463 for the year 1985. Petitioner and Daro each reported $12,216 of Cena's gross receipts on their 1985 individual Federal income tax returns.[3]

On May 9, 1985, petitioner and Daro opened a joint bank account at Norbank, North Kansas City, Missouri (Norbank), in the name of petitioner and Daro doing business as "Orad Associates" (Orad account and Orad). The signature cards for the Orad account bear the signatures of both petitioner and Daro. Included in the records of the Norbank account was a document entitled "Partnership Certificate" for the "General Co-partnership known as Orad Associates."

Although Daro signed the aforementioned partnership certificate, she testified that she was not a partner in Orad. Furthermore, she testified that she had nothing to do with Orad, and that petitioner operated Orad exclusively.

During 1985, $20,971 was deposited into the Orad account. With the exception of a $500 deposit (which was made from petitioner's personal bank account at Norbank) and a $2,000 deposit (which was made by Cena), all the remaining deposits into the Orad account were from Knappco, payable to Orad. The checks from Knappco, payable to Orad, were all signed by petitioner,

_____

[3] The record does not establish why petitioner and Daro included only $12,216 each on their returns, when one-half of Cena's $24,463 of gross receipts is $12,231.50.

presumably in her capacity as controller of Knappco.  Every check drawn on the Orad account was endorsed by petitioner.  There was no activity in the Orad account from August 1985 until May 1986, when petitioner endorsed a check payable to herself for $1,300, leaving a balance in the account of $13.69.  Thereafter, there was no activity from June 1986 through January 1987, when the account was closed by the bank for failure to pay service charges.

Orad did not file a Form 1065, U.S. Partnership Return of Income, for tax year 1985.  Orad had gross receipts of $18,471 in 1985.  Petitioner included one half of Orad's gross receipts on her 1985 Federal income tax return, or $9,235.  Daro, however, did not include any of Orad's gross receipts on her 1985 Federal income tax return.

Petitioner's employment with Knappco terminated on August 27, 1985, when she was fired for allegedly stealing from Knappco.  Subsequently, petitioner was charged with two felony counts of stealing by deceit money owned by Knappco.  Count 1 charged petitioner with issuing an unwarranted check in the amount of $6,576 payable to Orad, and count 2 charged petitioner with issuing an unwarranted check in the amount of $3,405 payable to Cena.  On June 6, 1986, petitioner pled guilty to both felony counts of stealing by deceit from Knappco.

Petitioner testified that she owned three vehicles during 1985:  A 1965 Ford Mustang, a 1976 Chevrolet pickup truck

(truck), and a 1985 Ford Mustang. Petitioner further testified that the 1965 Mustang and the truck were used partially for business use and partially for personal use, while the 1985 Mustang was used exclusively for personal use. The truck was purchased by petitioner in May of 1985. Petitioner purchased the truck for $3,330, paying with two separate checks drawn on the Orad account. The 1985 Mustang was purchased by petitioner on June 12, 1985, with a down payment in the amount of $7,000, paid with a check drawn on the Orad account. During 1985, petitioner sold her 1985 Mustang.

## OPINION

### Issue 1. Unreported Schedule C Income

Respondent determined that all of the income derived by Orad should be included in petitioner's return. Petitioner asserts that Orad was a partnership; thus, only one-half of the income from Orad is taxable to her.

As a general rule, the Commissioner's determinations are afforded a presumption of correctness, and the taxpayer bears the burden of proving that those determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

A partnership is broadly defined as "a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on". Sec. 7701(a)(2); sec. 1.761-1(a), Income Tax Regs. Generally, a partnership exists when persons

"join together their money, goods, labor, or skill for the purpose of carrying on a trade, profession, or business and when there is community of interest in the profits and losses." Commissioner v. Tower, 327 U.S. 280, 286 (1946). The existence of the requisite purpose is a question of fact that turns on the parties' intent. Commissioner v. Culbertson, 337 U.S. 733, 742 (1949). Moreover, while the existence or nonexistence of a partnership under common law or State law may be relevant, Federal law controls classification for Federal tax purposes. Estate of Kahn v. Commissioner, 499 F.2d 1186 (2d Cir. 1974), affg. Grober v. Commissioner, T.C. Memo. 1972-240; Luna v. Commissioner, 42 T.C. 1067, 1077 (1964); sec. 1.761-1(a), Income Tax Regs.

There are several factors to be weighed in determining whether a partnership exists, none of which alone is determinative. Alhouse v. Commissioner, T.C. Memo. 1991-652, affd. sub nom. Bergford v. Commissioner, 12 F.3d 166 (9th Cir. 1993). The test is whether:

> considering all the facts--the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent--the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise. [Commissioner v. Culbertson, supra at 742; fn. ref. omitted]

Petitioner argues that she and Daro operated Orad as a partnership. Petitioner notes that she and Daro each signed the

signature card for the Orad account, and that they each signed a partnership agreement. Furthermore, petitioner notes that Orad is Daro's name spelled backwards.

Although a partnership certificate was signed by both petitioner and Daro, the terms of the agreement relate exclusively to the Orad joint checking account. The agreement is a one-page document that addresses the relationship of petitioner, Daro, and the bank relative to the joint checking account; the document does not address the signatories' business relationship, if any. Accordingly, we find that this agreement alone does not demonstrate petitioner's and Daro's intent to carry on a business as partners. In addition, such an intent was specifically denied by Daro. Daro testified that she was not a partner in Orad, that she had nothing to do with Orad, and that petitioner operated Orad exclusively. This testimony is supported by the record, since every check drawn on the Orad account was endorsed by petitioner. Thus, it appears that petitioner had exclusive control over Orad's income.

Petitioner argues that both she and Daro received distributions from Orad, indicating a partnership relationship. Specifically, petitioner noted that a $1,000 check drawn on the Orad account was made out to Daro. Respondent argues that this payment to Daro was merely a reimbursement of one half of the $2,000 contributed to Orad by Cena. Daro corroborated respondent's argument, noting that Cena contributed $2,000 to

Orad so Orad could open a bank account and that the $1,000 payment she received from Orad was repayment of her 50-percent share of the Cena contribution. Since the parties agree that petitioner and Daro were partners in Cena and Cena did contribute $2,000 to Orad, we find that Orad's payment to Daro was a mere reimbursement, not a partnership distribution. In addition, we find that this transaction supports respondent's position that petitioner and Daro were not co-proprietors of Orad, since Daro never made a capital contribution to Orad.

Petitioner's own testimony also indicates the lack of a co-proprietor relationship. Petitioner testified that she "controlled the Orad account," and that she "got the Orad money."

Based on the foregoing, we find that petitioner has failed to carry her burden of establishing that Orad was a partnership for the year at issue. Accordingly, we sustain respondent's determination.[4]

## Issue 2. Schedule C Deductions

Respondent determined that petitioner was not entitled to deduct a number of claimed Schedule C expenses. Petitioner asserts that such expenses are allowable.

---

[4] Although we sustain respondent's determination that Orad was not a partnership, we find that petitioner had $9,236 of unreported Schedule C gross receipts from Orad, not $9,710 as alleged by respondent. The $9,236 represents one half of Orad's gross receipts ($18,471). Petitioner already included the remaining $9,235 in her 1985 Federal income tax return.

A taxpayer may deduct ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business.  Sec. 162(a).  Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that she is entitled to claimed deductions.  Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, supra at 115.  This includes the burden of substantiating the amount and purpose of the item claimed.  Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976); sec. 1.6001-1(a), Income Tax Regs.  However, if certain claimed deductions are not adequately substantiated, we are permitted to estimate them, provided we are convinced from the record that the taxpayer has incurred such expenses and we have a basis upon which to make an estimate.  Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).

A.  Bank Service Charges

Respondent determined that petitioner was not entitled to a deduction for bank service charges.  Petitioner asserts that such a deduction is allowable.

During 1985, petitioner had three bank accounts in her name: A Norbank account, a Lafayette County Bank (Lafayette Bank) account, and a Blue Springs Bank account.  Petitioner's account with Norbank was separate from Orad's Norbank account.  Petitioner had $105 in bank service charges arising from her

three individual accounts.  On her 1985 Federal income tax return, petitioner deducted the entire $105 in bank charges. In her notice of deficiency, respondent disallowed this deduction.

Petitioner argues that, since she conducted her Avon business through these three accounts, the service charges are deductible.  However, petitioner conceded that she also used the accounts for "personal" purposes.  Petitioner did not attempt to quantify the personal use versus the business use.  Respondent conceded that petitioner was entitled to deduct $24 of the $105 in service charges, apparently recognizing that the portion of the service charges attributable to the Avon business was deductible.  Petitioner has failed to substantiate that the remaining $81 claimed was a deductible business expense. Therefore, we sustain respondent's determination.

B.  Car and Truck Expenses

Petitioner claimed a deduction of $1,564 for car and truck expenses on Schedule C of her 1985 Federal income tax return. Respondent determined that only $420 of such amount was allowable.  Petitioner asserts that the entire amount claimed is allowable.

When a taxpayer uses a vehicle for both business and personal purposes, she must produce sufficient evidence by which this Court can determine what portion of such expenses was for business purposes and what portion was for personal purposes. Cobb v. Commissioner, 77 T.C. 1096, 1101 (1981).

Petitioner had three vehicles in 1985. She testified that she claimed deductions only for the expenses related to two of her vehicles, the 1965 Mustang and the truck. According to petitioner, she used both the 1965 Mustang and the truck for business purposes and personal purposes. Respondent determined that petitioner would qualify for the standard mileage deduction and allowed such deduction for 1985. We believe that petitioner used the 1965 Mustang in her Avon business and the truck in the Orad business; however, petitioner presented no evidence as to what portion of her claimed expenses was for business purposes and what portion was for personal purposes. Therefore, we sustain respondent's determination with respect to this item. See Cobb v. Commissioner, supra; Shelley v. Commissioner, T.C. Memo. 1994-432; Cady v. Commissioner, T.C. Memo. 1990-474.

C.    Depreciation

Respondent determined that petitioner was not entitled to the depreciation deduction claimed on her 1985 Federal income tax return. Petitioner asserts that such deduction is allowable.

Section 167 provides, in part, for a depreciation deduction with respect to property used in a trade or business. Depreciation allows the taxpayer to recover the cost of the property used in a trade or business or for the production of income. United States v. Ludey, 274 U.S. 295, 300-301 (1927); Southeastern Bldg. Corp. v. Commissioner, 3 T.C. 381, 384 (1944), affd. 148 F.2d 879 (5th Cir. 1945). To substantiate entitlement

to a depreciation deduction, the taxpayer must show that the property was used in a trade or business (or other profit-oriented activity). In addition, the taxpayer must establish the property's depreciable basis, by showing the cost of the property, its useful life, and the previously allowable depreciation. E.g., <u>Delsanter v. Commissioner</u>, 28 T.C. 845, 863 (1957), affd. 267 F.2d 39 (6th Cir. 1959).

In her 1985 Federal income tax return, petitioner claimed a depreciation deduction of $4,495. Petitioner computed the claimed deduction as follows:

| | |
|---|---|
| 1976 Chevrolet truck | $825 |
| 1984 Mark twain boat | 1,320 |
| Kaypro 16 computer | 2,150 |
| Petitioner's home | 200 |
| Total | 4,495 |

Respondent disallowed this amount in full. Subsequently, petitioner conceded that she was not entitled to deduct a depreciation expense in the amount of $1,320 in connection with a 1984 Mark Twain boat, since the boat was never used in a trade or business. Therefore, the amount at issue is $3,175 ($4,495 less $1,320), which includes depreciation claimed on the truck, the computer, and petitioner's home.

In addition to claiming depreciation on the truck, petitioner also claimed a deduction based on the applicable mileage rate. Respondent allowed a portion of such deduction. See <u>supra</u> p. 12. A depreciation deduction is not allowed where a

taxpayer claims a deduction based on a mileage rate. Nash v. Commissioner, 60 T.C. 503, 520 (1973); Alisobhani v. Commissioner, T.C. Memo. 1994-629. Accordingly, we sustain respondent's disallowance of petitioner's claimed depreciation arising from the truck.

In regard to the depreciation claimed on the computer, respondent argued that petitioner did not substantiate her purchase of the computer. To substantiate her entitlement to a depreciation deduction for the computer, petitioner must establish, among other things, the computer's depreciable basis, by showing the cost of the property. Delsanter v. Commissioner, supra; Kerrigan v. Commissioner, T.C. Memo. 1995-483; Greenway v. Commissioner, T.C. Memo. 1980-97.

To demonstrate Orad's cost basis in the computer, petitioner provided a purported bill of sale dated February 28, 1985; the bill of sale shows that Knappco purchased a computer from Kansas City Digital Systems. Petitioner also provided a check made to the order of Lafayette Bank for $5,985, which she claims to have used to purchase a cashier's check. Petitioner claims she then gave Knappco the cashier's check in exchange for the computer. Finally, petitioner produced a purported bill of sale from Knappco to Orad, which indicates that Knappco sold a Kaypro

computer to Orad for $5,985.  This document was purportedly signed by K. E. Haslow (Haslow).[5]

Respondent argues that the purported bill of sale from Knappco to Orad is not authentic.  To support this assertion, respondent introduced a letter from Haslow, wherein Haslow indicates that Knappco did not sell a Kaypro computer to petitioner.  Furthermore, respondent contends that the check payable to Lafayette Bank was in fact a principal payment for petitioner's mortgage on her house, since the notation on the check reads "For 599 Hwy 224", which is the address of a house petitioner purchased in 1985.

We find that petitioner has failed to substantiate her cost basis in the Kaypro computer.  The bill of sale from Kansas City Digital Systems lists the purchaser as Knappco, not petitioner or Orad.  And, most importantly, petitioner did not produce a copy of the cashier's check allegedly used to purchase the computer from Knappco; rather, she testified that her attorney in her criminal case had a copy of such check.  Since petitioner cannot establish that she purchased the Kaypro computer, we hold that she may not claim a deduction for its depreciation.  See Delsanter v. Commissioner, supra; Kerrigan v. Commissioner, supra; Greenway v. Commissioner, supra.

---

[5]  Haslow was the vice president of administration for Mercury Metal Products, Inc.  Knappco was a division of Mercury Metal Products, Inc. in 1985.

Finally, in regard to petitioner's claimed deduction for the depreciation of her home, respondent argued that petitioner was claiming a double deduction for this depreciation. It is well settled that the Internal Revenue Code should not be interpreted to allow the equivalent of a double deduction. United States v. Skelly Oil Co., 394 U.S. 678, 684 (1969). Here, petitioner claimed, and respondent allowed, a depreciation deduction arising from petitioner's home in the computation of her home office expense. Petitioner is not allowed to claim a deduction twice. Therefore, we affirm respondent's determination as to this issue.

D. Repair and Maintenance Expenses

Respondent determined that petitioner was not entitled to claim a Schedule C deduction for repairs and maintenance in the amount of $852.

Petitioner claims that $531 of the claimed deduction arises from a computer service contract between Orad and Kansas City Digital Systems. To substantiate payment for the service contract, petitioner presented the check, discussed above, made to the order of Lafayette Bank for $5,985. Petitioner claims she used this check to purchase both the computer and the service contract. Also, in support of the claimed deduction, petitioner presented a service contract. Petitioner did not present any evidence in regard to the remaining $321 of her claimed deduction ($852 minus $531).

We find that petitioner has not substantiated her entitlement to her claimed repair and maintenance deduction.  The service contract presented by petitioner is between Kansas City Digital Systems and Knappco, not between Kansas City Digital Systems and petitioner or Orad.  Furthermore, as discussed above, petitioner did not establish that the check payable to Lafayette Bank was used to purchase a cashier's check.  See discussion supra p. 16.  Since petitioner has failed to substantiate that she is entitled to any deduction for repairs and maintenance, we sustain respondent's determination.

E.  Supply Expenses

Petitioner claimed a $4,586 deduction for supplies on her 1985 Federal income tax return.  Respondent determined that $4,278 of such amount was not allowable.  Subsequently, respondent allowed an additional deduction of $1,866.  Thus, respondent has allowed $2,174 of the $4,586 claimed by petitioner.  Petitioner asserts that the remaining $2,412 is allowable.

To substantiate her entitlement to $2,412 of disallowed deductions, petitioner presented a schedule and a number of canceled checks.  Petitioner presented $1,624 of checks to All American Appliance, but, at trial, she could not provide any explanation for the nature of such expenditures.  Furthermore, petitioner presented a receipt for $190 for a "red couch", which she claimed was for her truck.  Petitioner also presented a $598

receipt for a camper top and running boards, among other things, for her truck.

In total, the amounts paid to American Appliance and the amounts paid for improvements to the truck equal the amount disallowed by respondent--$2,412.  Petitioner has failed to prove that any of these disallowed amounts was a necessary expense for a business, rather than personal, purpose.  Therefore, petitioner failed to sustain her entitlement to a deduction for supplies in any amount greater than $2,174.  Accordingly, we sustain respondent's determination.

F.  Travel and Entertainment Expenses

Petitioner claimed a deduction of $446 on her 1985 Federal income tax return for travel and entertainment.  Respondent determined that petitioner was not entitled to this deduction.

Section 274(d) requires that the taxpayer substantiate by adequate records or by sufficient evidence corroborating her own statement expenses claimed for travel and entertainment by showing (1) the amount of the expense, (2) the time and place of travel or entertainment, (3) the business purpose of the travel or entertainment, and (4) the business relationship to the taxpayer of each person entertained.  These four elements must be established for each separate expenditure.  Sec. 1.274-5(c)(1), Income Tax Regs.

Petitioner presented a schedule showing the breakdown of the $446 deduction claimed -- expenditures in the amount $218, $119,

and $109.  In regard to the $218 expenditure, petitioner presented a cancelled check to Lama Tours International dated August 14, 1985, a Braniff airlines receipt dated August 15, 1985, and testimony regarding the business purpose of the trip. However, with regard to the two remaining checks, petitioner could not recall the time and place of each trip, nor could she remember the business purpose for each trip.  We find that petitioner has adequately substantiated her entitlement to a $218 travel and entertainment deduction.  As to the remainder of the amount claimed, we sustain respondent's determination.

G.  Utilities and Telephone

Petitioner claimed a $482 deduction for utilities and telephone on her 1985 Federal income tax return.  Respondent determined that such amount was not allowable.  Subsequently, respondent allowed $332 of this amount.  The remaining $150 is in dispute.

Petitioner offered no evidence to show that she is entitled to any expense for utilities and telephone in an amount greater than $332.  Since petitioner has failed to sustain her burden of proof, we affirm respondent's determination.

H.  Contract Labor

Petitioner claimed a $1,288 deduction for contract labor on her 1985 Federal income tax return.  Respondent determined that $654 of such amount was not allowable.  Subsequently, respondent allowed an additional deduction of $580.  Thus, respondent

concedes that $1,214 of the claimed deduction is allowable.

In regard to the remaining $74 at issue, petitioner testified that she could not substantiate such amount. Accordingly, we sustain respondent's determination.

I.  Charitable Expense

Petitioner claimed a charitable deduction of $50 on Schedule C of her 1985 Federal income tax return, which was disallowed. Subsequently, respondent allowed petitioner a $25 charitable deduction on Schedule A.  Petitioner asserts that the remaining $25 is allowable.

Petitioner offered no evidence to demonstrate her entitlement to a charitable deduction in excess of that allowed by respondent.  Consequently, we sustain respondent's determination.

Issue 3. Employee Business Expense Deductions

Petitioner claimed a $3,150 employee business expense deduction on her 1985 Federal income tax return, which respondent disallowed.

Since petitioner offered no evidence to substantiate the deduction, she has failed to carry her burden of proof. Therefore, we affirm respondent's determination.

Issue 4. Capital Loss

Petitioner claimed a $3,000 capital loss in connection with the sale of her 1985 Mustang automobile (Mustang).  Respondent determined that this amount was not allowable.  Petitioner

asserts that the loss is allowable as a business loss.  In the alternative, petitioner asserts that the loss is a casualty loss, since her incarceration by the State of Missouri caused the loss.

Section 165(a) allows a taxpayer to deduct "any loss sustained during the taxable year and not compensated for by insurance or otherwise."  However, section 165(c) limits the scope of this deduction for individuals.  Individuals may take deductions only for losses which are incurred in a trade or business, losses incurred in transactions entered into for profit, and certain casualty and theft losses.  Sec. 165(c)(1), (2), and (3).

To demonstrate that a loss was incurred in a trade or business or a transaction entered into for profit, the taxpayer must show that the activity in question was undertaken with the primary intention and motivation of making a profit.  Jasionowski v. Commissioner, 66 T.C. 312, 319 (1976).

During trial, petitioner conceded that the Mustang was used only for personal use.  Except for this testimony, petitioner presented no evidence indicating that the Mustang was used in any activity which she engaged in for profit. Accordingly, we find that petitioner may not claim a deduction for the loss she sustained on the sale of the Mustang under either section 165(c)(1) or (2).  Seletos v. Commissioner, 254 F.2d 794, 797 (8th Cir. 1958), affg. T.C. Memo. 1956-283; Newton v. Commissioner, 57 T.C. 245, 248 (1971).

A deduction is authorized, with certain limitations, for losses of property even though not connected with a trade or business or a transaction entered into for profit if the loss arises from "fire, storm, shipwreck, or other casualty, or from theft."  Sec. 165(c)(3).

Here, petitioner appears to argue that her incarceration was an "other casualty," thus entitling her to the claimed deduction. This Court has generally adhered to the view that in construing the term "other casualty" as used in section 165(c)(3), the rule of ejusdem generis is applicable; that is, in order for the loss to be deductible, the taxpayer must prove that the destructive event or happening was similar in nature to a fire, storm, or shipwreck.  Newton v. Commissioner, supra.  Accordingly, we have found that the term "other casualty" covers losses arising from sudden, unexpected forces exerted on property, forces which abruptly change the property's form.  E.g., Marx v. Commissioner, T.C. Memo. 1991-598; Wold v. Commissioner, T.C. Memo. 1963-154.

The sale of a car is not the type of casualty covered by section 165(c)(3), even if such sale is compelled by a person's imminent incarceration.  Accordingly, petitioner is not entitled to deduct her realized loss under section 165(c).  Therefore, we sustain respondent's determination as to this issue.

Issue 5. Self-Employment Tax

Respondent determined that petitioner had additional self-employment income subject to tax under section 1401.

Section 1401 imposes taxes on the self-employment income of every individual. Section 1402(b) defines self-employment income as the net earnings from self-employment derived by an individual. Section 1402(a) defines an individual's net earnings from self-employment as the gross income derived by an individual from any trade or business carried on by such individual, reduced by income tax deductions attributable to the trade or business. Petitioner bears the burden of proving that she is not liable for additional taxes imposed by section 1401. Rule 142(a).

Petitioner does not dispute that she had additional self-employment income during the year at issue. Therefore, we affirm respondent's determination.

## Issue 6. Negligence

Respondent determined that petitioner was liable for the additions to tax for negligence under section 6653(a)(1) and (2).

Section 6653(a)(1) provides for an addition to tax of 5 percent of the underpayment if any part of the underpayment is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) provides for an addition to tax of 50 percent of the interest payable under section 6601 with respect to the portion of the underpayment which is attributable to negligence or intentional disregard of rules or regulations.

Negligence under section 6653(a) is a "'lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'" Neely v. Commissioner, 85

T.C. 934, 947 (1985) (quoting <u>Marcello v. Commissioner</u>, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964) and T.C. Memo. 1964-299).  The taxpayer has the burden of proving that the Commissioner's determination of the additions to tax under section 6653(a) is erroneous.  Rule 142(a); <u>Bixby v. Commissioner</u>, 58 T.C. 757 (1972).

Petitioner has not presented evidence to establish that she was not negligent or did not disregard rules or regulations. Accordingly, we sustain respondent's determination.

<u>Issue 7. Substantial Understatement</u>

Respondent determined that petitioner was liable for the addition to tax for substantial understatement under section 6661(a).

Section 6661(a) imposes an addition to tax on a substantial understatement of income tax.  The section provides that if there is a substantial understatement of income tax, there shall be added to the tax an amount equal to 25 percent of the amount of any underpayment attributable to such understatement.  Sec. 6661(a).[6]  The taxpayer bears the burden of proving that the

---

[6]  Sec. 6661, as originally enacted in 1982, set the amount of the addition at 10 percent of the amount of any underpayment attributable to the substantial understatement.  Sec. 8002 of the Omnibus Budget Reconciliation Act of 1986, Pub. L. 99-509, 100 Stat. 1874, 1951, amended sec. 6661(a) to increase the amount of the addition to 25 percent for additions assessed after October 21, 1986.  See <u>Pallottini v. Commissioner</u>, 90 T.C. 498, 501-502 (1988).  Since the addition will not be assessed until the Court's decision is final, the 25-percent rate applies.  <u>Kim v. Commissioner</u>, T.C. Memo. 1991-288.

Commissioner's determination as to the addition to tax under section 6661(a) is erroneous. Rule 142(a).

An understatement is substantial where it exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000. Sec. 6661(b)(1)(A). An understatement is the difference between the amount required to be shown on the return and the amount actually shown on the return. Sec. 6661(b)(2); Tweeddale v. Commissioner, 92 T.C. 501 (1989); Woods v. Commissioner, 91 T.C. 88 (1988). The section 6661 addition to tax is not applicable, however, if there was substantial authority for the taxpayer's treatment of the items in issue or if relevant facts relating to the tax treatment of those items were disclosed on the return. Sec. 6661(b)(2)(B)(i) and (ii).

Petitioner has not argued that either exception applies here, nor has she presented any evidence which would invoke either exception. Accordingly, petitioner has failed to sustain her burden of proof. Therefore, if the recomputed deficiency under Rule 155 satisfies the statutory percentage or amount, petitioner will be liable for that addition to tax.

Finally, petitioner asserts that her constitutional rights have been violated. We see no need to catalog petitioner's contentions and painstakingly address them, as they are without merit. As the Court of Appeals for the Fifth Circuit has remarked: "We perceive no need to refute these arguments with somber reasoning and copious citation of precedent; to do so

might suggest that these arguments have some colorable merit."
<u>Crain v. Commissioner</u>, 737 F.2d 1417 (5th Cir. 1984).

To reflect the foregoing opinion and the concessions of the parties,

<u>Decision will be entered</u>
<u>under Rule 155.</u>